IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CATLIN SPECIALTY INSURANCE, COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-261 |
| L.A. CONTRACTORS, LTD., | § § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant L.A. Contractors, LTD., ("LAC")'s Motion to Dismiss (Doc. 18). The court has considered the motion, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant LAC's motion be **DENIED**.

### I. Case Background

This insurance case centers around LAC's alleged indemnity obligation related to a settlement reached between Catlin Specialty Insurance Company ("Catlin") and the estate of an employee of LAC.

### A. Factual History

On June 1, 2010, Wolverine Construction, Inc., ("Wolverine") and LAC signed a Master Service Agreement ("MSA").[2] The MSA

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 24.

[2] See Doc. 1-3, Ex. 3 to Pl.'s Compl., Master Service Agreement p. 4.

included an indemnity provision whereby LAC and Wolverine mutually agreed to defend and indemnify one another for all claims asserted by the other's employees.[3]   Additionally, LAC was required to maintain worker's compensation, general liability insurance, and automobile liability insurance.[4]   The MSA stated that "the insurance requirements set forth herein are supplementary to and shall not limit or restrict as to amount, extent or otherwise the defense and indemnity obligations undertaken by [LAC] under this Agreement."[5]   Additionally, LAC agreed that its insurance policy "shall waive the right of subrogation against [Wolverine]."[6] Another provision of the MSA stated that Wolverine's indemnity obligation "will be supported by insurance and will have the same requirements and conditions for insurance" as provided in paragraphs outlining LAC's obligations.[7]

On February 15, 2011, Wolverine obtained insurance through Liberty Mutual.[8]   Included in Liberty Mutual's contract was a waiver of transfer of rights to recovery against others to Liberty that stated: "We waive any right of recovery we may have against

---

[3]   See id. p. 2.

[4]   See id.

[5]   Id.

[6]   Id.

[7]   See id. p. 3.

[8]   See Doc. 1-2, Ex. 2 to Pl.'s Compl., Liberty Mutual Insurance Policy p. 2.

the person or organization shown in the Schedule above."[9]  The schedule indicated that the waiver extended to "[a]ll persons or organizations where the named insured has agreed, by written contract executed prior to the date of occurrence, to waive rights of recovery against such person or organization."[10]  In addition to its contract with Liberty Mutual, Wolverine obtained an excess liability policy with Catlin.[11]  Wolverine's contract with Catlin contained a similar waiver stating that Catlin waived any right of recovery "as per written contract."[12]

On April 14, 2011, the estate of an employee of LAC brought a claim against Wolverine in Zapata County, Texas, alleging that the employee died as the result of a workplace injury related to automobiles.[13]  Wolverine demanded indemnity from LAC based on the MSA, but according to Catlin's complaint, LAC did not defend or indemnify Wolverine as required by the MSA.[14]

In July 2013, Wolverine entered into a settlement with the decedent's estate.[15]  In connection with the settlement, Catlin paid

---

[9]      Id. p. 58.

[10]     Id.

[11]     See Doc. 1-1, Ex. 1 to Pl.'s Compl., Catlin Excess Insurance Agreement p. 2.

[12]     Id. p. 32.

[13]     See Doc. 1, Pl.'s Compl. p. 2-3.

[14]     See id. p. 3.

[15]     See id. p. 4.

more than the jurisdictional minimum on behalf of Wolverine and pursuant to the terms of Wolverine's insurance policy.[16]

**B.   Procedural History**

Catlin filed this lawsuit on February 4, 2014, alleging contractual indemnity and breach of contract against LAC.[17]

On September 5, 2014, LAC filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) and 12(c).[18]  Catlin filed a response on September 12, 2014.[19]  LAC filed a reply on September 30, 2014, and Catlin filed a surreply on the same day.[20]

## II.  Legal Standard

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011).

A complaint need not contain "detailed factual allegations"

---

[16]   See id.

[17]   See id. p. 1.

[18]   See Doc. 18, Def.'s Mot. to Dismiss.

[19]   See Doc. 21, Pl.'s Reply to Def.'s Mot. to Dismiss.

[20]   See Doc. 22, Def.'s Reply to Pl.'s Br., Doc. 23, Pl.'s Surreply to Def.'s Reply.

but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. 678.

Pursuant to Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed but early enough in the litigation not to delay trial. The same standard is used in considering a motion for judgment on the pleadings as is used in considering a Rule 12(b)(6) motion to dismiss. Gentilello v. Rege, 627 F.3d 540, 543-44 (5th Cir. 2010).

### III. Analysis

LAC argues that the language of the MSA created an unlimited waiver of subrogation between LAC and Wolverine. LAC posits that because it had a written contract granting a waiver of subrogation, that waiver applies to the underlying insurance contract, which extended subrogation to all organizations agreed by written

contract to waive subrogation, and that therefore Catlin fails to state a claim upon which relief can be granted.

Catlin responds that LAC has a duty to indemnify Catlin under the terms of the MSA, and that, assuming for the purposes of argument that LAC's waiver of subrogation was valid, LAC could not enforce the provision because it materially breached its agreement with Wolverine.

Catlin relies primarily on the Texas Supreme Court's decision in <u>Ken Petroleum Corp. v. Questor Drilling Corp.</u>, 24 S.W.3d 344 (Tex. 2000). In that case, the court considered whether a provision regarding a waiver of subrogation precluded plaintiff's underwriters from enforcing an indemnity agreement. <u>See</u> <u>id.</u> at 355. The court found that a provision that waived plaintiff's right to subrogation in certain circumstances did not prevent plaintiff's underwriters from enforcing an indemnity agreement against defendant. <u>Id.</u>

In this case, Wolverine and LAC's MSA contained an indemnity provision that stated that LAC would protect, defend, indemnify and hold Wolverine harmless from all claims asserted by LAC's employees.[21] Additionally, the contract specifically stated that "[t]he insurance requirements set forth herein are supplementary to and shall not limit or restrict as to amount, extent or otherwise the defense and indemnity obligations undertaken by [LAC] under

---

[21]    <u>See</u> Doc. 1-3, Ex. 3 to Pl.'s Compl., Master Service Agreement p. 2.

6

this Agreement."[22]

Catlin has made a short, plain statement showing that it is entitled to relief under the MSA.[23]   Thus, the court finds that Catlin has adequately stated a claim upon which relief can be granted.

## IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of January, 2015.

U.S. MAGISTRATE JUDGE

---

[22]   Id.

[23]   Because this court finds that Plaintiff has a claim based on the MSA's indemnity provision, it need not consider whether Defendant materially breached its obligations under the MSA at this time.

7