IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CATLIN SPECIALTY INSURANCE, COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-261 |
| L.A. CONTRACTORS, LTD., | § § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant L.A. Contractors, LTD.'s, ("LAC") Motion for Summary Judgment (Doc. 40) and Plaintiff Catlin Specialty Insurance Company's ("Catlin") Cross-Motion for Partial Summary Judgment (Doc. 44). The court has considered the motion, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that LAC's motion be **DENIED** and Catlin's motion be **GRANTED**.

## I.  Case Background

This insurance case centers around LAC's alleged indemnity obligation related to a settlement between Catlin and the estate of an employee of LAC.

## A.  Factual History

---

[1]   This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 24.

Wolverine Construction, Inc., ("Wolverine") and LAC signed a Master Service Agreement ("MSA") dated June 1, 2010.[2]  The MSA included mutual indemnity provisions.[3]  LAC promised that:

> [LAC] shall protect, defend (including attorney's fees, costs, expert fees, deposition costs and other expenses of litigation), indemnify and hold harmless [Wolverine] and its subsidiaries, affiliates. . . and employees from and against all claims, demands, and causes of action asserted by [LAC] and its subsidiaries, affiliated companies, . . . employees and its/their contractors employees, invitees and agents that arise out of or are related to this agreement regardless of the fault or negligent [sic] sole or concurrent of any indemnified party, that result in personal injury (including bodily injury), illness, death or property loss or damage, or any civil fines or penalties imposed by any governmental agency, officer, or court of law.[4]

As part of its indemnity agreement, LAC additionally was to obtain worker's compensation, general commercial liability and automobile insurance, and to list Wolverine and its directors, officers, and agents as additional insureds, except in the case of worker's compensation insurance, for work performed by LAC on Wolverine's behalf.[5]  Additionally, LAC agreed that its insurance policy under the agreement would waive the right of subrogation against

---

[2]     See Doc. 1-3, Ex. 3 to Pl.'s Compl., MSA p. 4.  LAC now attempts to argue that the agreement was not actually signed on the date indicated.  However, the contract is not ambiguous, so the court cannot consider LAC's parol evidence.  See David J. Sacks, P.C. v. Haden, 266 S.W.3d 447, 450-51 (Tex. 2008).  Further, LAC's live answer admits that it was performing work pursuant to the MSA.  Doc. 39, Pl.'s 1st Am. Answer p. 10.

[3]     See Doc. 1-3, Ex. 3 to Pl.'s Compl., MSA p. 2.

[4]     Id.

[5]     Id.

Wolverine, its parents, and its subsidiaries.[6]  Wolverine in turn agreed that "[Wolverine]'s indemnity obligation will be supported by insurance and have the same requirements and conditions for insurance as provided in [the preceding paragraphs]."[7]

On February 15, 2011, Wolverine obtained insurance through Liberty Mutual.[8]  Included in Liberty Mutual's contract was a waiver of transfer of rights to recovery against others to Liberty that stated: "We waive any right of recovery we may have against the person or organization shown in the Schedule above."[9]  The schedule indicated that the waiver extended to "[a]ll persons or organizations where the named insured has agreed, by written contract executed prior to the date of occurrence, to waive rights of recovery against such person or organization."[10]

In addition to its contract with Liberty Mutual, Wolverine obtained an excess liability policy with Catlin.[11]  Wolverine's policy with Catlin was scheduled to run for the period between February 15, 2011, and February 15, 2012.[12]  Wolverine's contract

---

[6]     Id.

[7]     Id.

[8]     See Doc. 1-2, Ex. 2 to Pl.'s Compl., Liberty Mutual Insurance Policy p. 2.

[9]     Id. p. 58.

[10]    Id.

[11]    See Doc. 1-1, Ex. 1 to Pl.'s Compl., Catlin Excess Insurance Agreement p. 2.

[12]    See id. p. 18.

with Catlin contained a similar waiver of subrogation stating that Catlin waived any right of recovery "as per written contract."[13]

On April 14, 2011, the estate of an employee of LAC brought a claim against Wolverine in Zapata County, Texas, alleging that the employee died as the result of a workplace injury related to an automobile.[14]  Wolverine demanded defense and indemnity from LAC based on the MSA, but, according to Catlin's complaint, LAC did not defend or indemnify Wolverine as required by the MSA.[15]

In July 2013, Wolverine entered into a settlement with the decedent's estate.[16]  In connection with the settlement, Catlin paid more than the jurisdictional minimum on behalf of Wolverine and pursuant to the terms of Wolverine's insurance policy.[17]

**B.   Procedural History**

Catlin filed this lawsuit on February 4, 2014, alleging a right to contractual indemnity and breach of contract against LAC.[18]

LAC filed a motion for summary judgment on April 13, 2015.[19] Catlin filed a response and cross-motion for partial summary

---

[13]    Id. p. 32.

[14]    See Doc. 1, Pl.'s Compl. p. 2-3.

[15]    See id. p. 3.

[16]    See id. p. 4.

[17]    See id.

[18]    See id. p. 1.

[19]    See Doc. 40

judgment on May 11, 2015.[20]

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which

---

[20]     See Doc. 44, Pl.'s Cross Mot. for Partial Summ. J.

the nonmoving party bears the burden, the movant will be entitled to summary judgment. <u>Celotex Corp.</u>, 477 U.S. at 322. However, if the party opposing summary judgment responds with evidence in support of each challenged element, the case must be resolved at trial. <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. City of Henderson, Tex.</u>, 286 F.3d 264, 269 (5th Cir. 2002).

### III. Analysis

LAC argues that it is entitled to summary judgment because Wolverine waived all subrogation rights and because LAC is an additional insured under Catlin's insurance policy. In its cross-

motion, Catlin argues that it has not waived its right to subrogation and LAC's affirmative defenses relating to Wolverine and Catlin's waivers of subrogation should be dismissed as a matter of law.  The court will consider the parties' arguments in turn.

## A.  Waiver of Subrogation

LAC argues that Catlin is barred from enforcing any potential claim against LAC because Wolverine agreed in the MSA to waive subrogation rights and Catlin agreed to waive all subrogation rights as per written agreement.  LAC characterizes Wolverine's waiver as an "unlimited waiver of subrogation" that eliminates any potential rights Catlin may have against it.

Catlin responds that the MSA required Wolverine to purchase insurance for the limited purpose of supporting a reciprocal indemnity provision.  Catlin argues that there is no explicit provision in the MSA requiring Wolverine to waive its right to subrogation, but that even if Wolverine did agree to waive such right, such waiver was limited to Wolverine's indemnity obligation.

In interpreting a written contract, a court's primary concern is to determine the intentions of the parties.  Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994).  To determine the intent of the parties, the court must examine the entire document and "consider each part with every other part so that the effect and meaning of one part on any other part may be determined." Heritage Resources, Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.

1996).

Subrogation can be created by contractual agreement or by equity where a party has paid a debt for which another party was liable. Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex. 2007). Regardless of how the right is created, "the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party, subject to any defenses held by the third party against the insured." Id. Subrogation rights belong to the subrogated party and are waivable only by the insurer, not the insured. Austin Indep. School Dist. v. H.C. Beck Partners, Ltd., 2009 WL 638189, at *2 n. 3 (Tex. App.—Austin (Mar. 2009, pet. denied). Therefore in order to have a valid waiver of subrogation, the insurer must agree to a waiver and must then obtain a separate endorsement from its insured waiving its subrogation rights. Id. (citing Chevron U.S.A., Inc. v. Cigna Ins. Co. of Tex., 1998 WL 472501, at *3 (Tex. App.—Beaumont Aug. 1998, pet. denied)).

In its cross-motion, Catlin relies primarily on Ken Petroleum Corp. v. Questor Drilling Corp., 24 S.W.3d 344 (Tex. 2000). In Ken Petroleum, a contractor's employee was injured and sued the company, which settled the employee's claim. Id. at 347. The company then attempted to enforce an indemnity agreement against the contractor, but the trial court found the indemnity agreements were void, and the appellate court affirmed. Id. The Texas

Supreme Court reversed the lower courts by finding the indemnity agreements valid, and additionally considered whether Ken Petroleum had waived its right to subrogation.  Id. at 355-56.  The court found that Ken Petroleum's waiver of subrogation applied only as it related to payments Ken Petroleum would have to pay to indemnify Questor, and that this case related to Questor indemnifying Ken Petroleum.  Id.  The court therefore found that Questor owed indemnity obligations to either Ken Petroleum, its insurer, or both.  Id. at 356.

LAC relies on several cases for its position that Catlin cannot enforce its subrogation rights against it.  In Chevron v. Cigna, an employee of a sub-contractor was injured and Cigna, the subcontractor's insurer, paid worker's compensation benefits.  Id. at *2-3.  The subcontractor's employee sued and settled a third-party claim against Chevron.  Id. at *1.  As part of a contract between Chevron and its primary contractor, the contractor and its subcontractor were required to obtain insurance in connection with an indemnity agreement, including a waiver of subrogation in favor of Chevron.  Id. at *3.  Cigna's insurance contract with the subcontractor provided a blanket waiver of subrogation for any organization which the subcontractor had agreed to waive its subrogation rights by written agreement.  Id.  After the settlement, Cigna attempted to recover its worker's compensation payments from Chevron.  Id. at *1.  The trial court

9

granted summary judgment for Cigna, but the appellate court found that the subcontractor's waiver of subrogation applied and therefore granted Chevron's motion for summary judgment.  Id. at *4.

LAC additionally cites to two Southern District of Texas cases where this court similarly found that an insurer was barred from enforcing its lien against a third party due to a waiver of subrogation agreement between the contractor and principal and an agreement in the insurance contract promising to waive any subrogation rights as agreed by written contract.  See Sims v. Envtl., Safety & Health Consulting Servs., Inc., No. H:13-cv-1694, 2014 WL 6633248 (S.D. Tex. 2014); Liberty Ins. Corp. v. SM Energy, No. H:12-cv-3092, 2012 WL 6100303, at *7-8 (S.D. Tex. 2012).

The court finds that the present facts are distinguishable from the cases cited by LAC.  In the Chevron case, a contractor's employee sued the contracting company, and the contractor's insurer sued the company for contribution of worker's compensation payments, but was unable to collect.  Chevron, 1998 WL 472501 at *1.  Here, like the Chevron case, the contractor's employee sued the contracting company, but unlike the circumstances in the Chevron case, LAC and its insurers did not bring suit for contribution; instead, Catlin brought suit to enforce Wolverine's indemnity provisions.  Similarly, LAC's federal district court cases involved contractor's insurance companies attempting to

collect in the face of broad waivers of subrogation.  <u>See</u> <u>Sims</u>, 2014 WL 6633248 at *1-2; <u>Liberty</u>, 2012 WL 6100303 at *2.

By contrast, the present case is facially identical to <u>Ken Petroleum</u>.  In <u>Ken Petroleum</u>, the contractor took no action after one of its employees sued the contractor's principal, and the principal sued the contractor for failing to honor its indemnity provision.  <u>Ken Petroleum</u>, 24 S.W.3d at 347-48.  Because the contractor's indemnity provision was involved, the waiver of subrogation within the principal's indemnity provision did not apply.  <u>Id.</u> at 355.

LAC attempts to distinguish the present case from <u>Ken Petroleum</u> by arguing that the subrogation clause in the underlying MSA was "unlimited" in contrast to the MSA in <u>Ken Petroleum</u>, where the waiver was limited to Ken Petroleum's indemnity agreement.

Here, the MSA provided that LAC was to obtain insurance and that under Paragraph 4.1, such insurance "shall waive the right of subrogation against [Wolverine]."[21]  Additionally, Paragraph 4.3 of the MSA states that "[Wolverine]'s indemnity obligations will be supported by insurance and have the same requirements and conditions for insurance as provided in Paragraphs 4.1, 4.2, and 4.3."

The court agrees with LAC's premise that Paragraph 4.3 of the MSA obligated Wolverine to obtain indemnity insurance with

---

[21]     <u>See</u>  Doc. 1-3, Ex. 3 to Pl.'s Compl., MSA p. 2.

reciprocal requirements and conditions, including a waiver of subrogation. However, the unambiguous contract language provided that Wolverine's waiver of subrogation is not "unlimited," but was instead limited to insuring Wolverine's indemnity obligations. Here, Catlin was attempting to enforce LAC's indemnity obligation; Wolverine's indemnity obligation has not been triggered and thus neither has its waiver of subrogation. The situation is thus identical to that of <u>Ken Petroleum</u>. Because Wolverine did not waive its subrogation rights to enforce LAC's indemnity obligations, Catlin has not waived its right to subrogate Wolverine's claims.

## B.   <u>Antisubrogation Rule</u>

LAC additionally argues that Catlin cannot sue LAC under the antisubrogation rule. LAC states that Wolverine had an explicit duty to name LAC as an additional insured, and that even if Wolverine failed to do so, the MSA was an "insured contract" as provided by the Liberty Mutual Insurance Contract.

The antisubrogation rule states that an insurer may not enforce a right of subrogation against its own insured for a claim arising from the same risk covered by the insurance. <u>See</u> <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Hartford Ins. Co. of Midwest</u>, 248 A.D.2d 78, 85 (N.Y. App. Div. 1998). The antisubrogation rule is based on public policy concerns and is rooted in principles of equity. <u>Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.</u>,

12

418 F. Supp. 56, 59 (N.D. Tex. 1976).

However, as discussed in the preceding section, in this case Wolverine was required to obtain insurance listing LAC as an additional insured pursuant to Wolverine's indemnity obligations. As discussed, Wolverine's indemnity obligations have not been triggered by the circumstances here, where Catlin seeks to enforce LAC's indemnity obligations. See Nat'l Union Fire Ins., 248 A.D.2d at 85. Because Catlin did not insure LAC's indemnity obligations, Catlin did not insure the claim arising from the risk covered by its insurance agreement with Wolverine and the antisubrogation rule does not apply.[22] The court therefore **RECOMMENDS** that LAC's fifth, sixth, seventh, tenth, eleventh, twelfth, thirteenth, and the antisubrogation part of its ninth affirmative defense related to waivers of subrogation and the antisubrogation rule be **DISMISSED** as a matter of law.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that LAC's motion for summary be **DENIED** and Catlin's Partial Motion for Summary Judgment be **GRANTED**. If this recommendation is adopted, LAC's fifth, sixth, seventh, tenth, eleventh, twelfth, thirteenth, and the antisubrogation part of its ninth affirmative defenses will be **DISMISSED** as a matter of law.

---

[22] Because the court reaches this conclusion, it does not discuss Catlin's arguments in the alternative regarding unclean hands. See Doc. 45, Pl.'s Resp. to Def.'s Mot. for Summ. J.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 9th day of October, 2015.

_____
U.S. MAGISTRATE JUDGE