United States District Court
Southern District of Texas

**ENTERED**

July 25, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CATLIN SPECIALTY INSURANCE,      §
COMPANY,                          §
                                  §
    Plaintiff,                   §
                                  §
v.                                §      CIVIL ACTION NO. H-14-261
                                  §
L.A. CONTRACTORS, LTD.,           §
                                  §
    Defendant.                   §

<u>**MEMORANDUM, RECOMMENDATION & ORDER**</u>

Pending before the court[1] are Defendant L.A. Contractors, LTD., ("LAC")'s Motion to Dismiss (Doc. 102), Motions for Summary Judgment (Docs. 73, 101) and Plaintiff Catlin Specialty Insurance Company ("Catlin")'s Cross-Motions for Partial Summary Judgment (Docs. 86, 104, 105). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that LAC's motions be **DENIED** and Catlin's motions be **GRANTED**.

## I. Case Background

This insurance case centers around LAC's alleged indemnity obligation related to a settlement between Catlin and the estate of an employee of LAC.

### A.   <u>Factual History</u>

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 24.

LAC was a trucking company that provided transportation services related to the oil and gas industry.[2] Wolverine Construction, Inc., ("Wolverine") was a construction company that performed work for Shell Oil Company in connection with an oil and gas lease in Dimmit County, Texas.[3]

Wolverine and LAC signed a Master Service Agreement ("MSA") dated June 1, 2010.[4] The MSA included mutual indemnity provisions.[5] LAC promised that:

> [LAC] shall protect, defend (including attorney's fees, costs, expert fees, deposition costs and other expenses of litigation), indemnify and hold harmless [Wolverine] and its subsidiaries, affiliates . . . and employees from and against all claims, demands, and causes of action asserted by [LAC] and its subsidiaries, affiliated companies, . . . employees and its/their contractors employees, invitees and agents that arise out of or are related to this agreement regardless of the fault or negligent [sic], sole or concurrent of any indemnified party, that result in personal injury (including bodily injury), illness, death or property loss or damage, or any civil fines or penalties imposed by any governmental agency, officer, or court of law.[6]

As part of its indemnity agreement, LAC additionally agreed to obtain worker's compensation, general commercial liability and automobile insurance in the amount of at least one million dollars,

---

[2]    See Doc. 101-1, Ex. A to Def.'s 2nd Am. Mot. for Summ. J., Aff. of Gonzalez ¶¶ 4-5.

[3]    See id. ¶ 5.

[4]    See Doc. 1-3, Ex. 3 to Pl.'s Compl., Master Service Agreement p. 4.

[5]    See id.

[6]    Id.

and to list Wolverine and its directors, officers, and agents as additional insureds, except in the case of worker's compensation, for work performed by LAC on Wolverine's behalf.[7]  Under the MSA, LAC supplied and transported construction materials and aggregate to Wolverine, who constructed well pad sites and built private roads.[8]

On February 15, 2011, Wolverine obtained insurance through Liberty Mutual.[9]  In addition to its contract with Liberty Mutual, Wolverine obtained an excess liability policy with Catlin.[10] Wolverine's policy with Catlin was scheduled to run for the period between February 15, 2011, and February 15, 2012.[11]

On April 15, 2011, the estate of an employee of LAC brought a claim against Wolverine in Zapata County, Texas, alleging that the employee died as the result of a workplace injury related to an automobile.[12]  On September 27, 2011, Wolverine contacted LAC to formally request and demand indemnity for the lawsuit based on the

---

[7]    Id.

[8]    See Doc. 101-1, Ex. A to Def.'s 2nd Am. Mot. for Summ. J., Aff. of Gonzalez ¶ 12.

[9]    See Doc. 1-2, Ex. 2 to Pl.'s Compl., Liberty Mutual Insurance Policy p. 2.

[10]   See Doc. 1-1, Ex. 1 to Pl.'s Compl., Catlin Excess Insurance Agreement p. 2.

[11]   See id. p. 18.

[12]   See Doc. 105-3, Ex. 3 to Pl.'s 3rd Mot. for Partial Summ. J., Original Pet. filed in the 293rd District Court on Apr. 15, 2011.

MSA.[13]  LAC refused to defend and indemnify Wolverine in the state court action.[14]

In July 2013, Wolverine entered into a settlement with the decedent's estate.[15]  In connection with the settlement, Catlin paid more than the jurisdictional minimum on behalf of Wolverine and pursuant to the terms of Wolverine's insurance policy.[16]

**B.    Procedural History**

Catlin filed this lawsuit on February 4, 2014, alleging a right to contractual indemnity and breach of contract against LAC.[17]

LAC filed its first motion for summary judgment based on subrogation on April 13, 2015.[18]  Catlin filed a response and cross-motion for partial summary judgment on May 11, 2015.[19]

On October 9, 2015, this court issued a memorandum and recommendation denying LAC's motion and granting Catlin's cross-motion.[20]  The district court adopted the memorandum and

---

[13]    See Doc. 105-4, Ex. 4 to Pl.'s 3rd Mot. for Partial Summ. J., Letter Requesting Indemnity dated Sept. 27, 2011.

[14]    See Doc. 105-2, Ex. 2 to Pl.'s 3rd Mot. for Partial Summ. J., Decl. of Thomas ¶ 4.

[15]    See Doc. 1, Pl.'s Compl. p. 4.

[16]    See id.

[17]    See id. p. 1.

[18]    See Doc. 40, Def.'s Mot. for Summ. J.

[19]    See Doc. 44, Pl.'s Cross-Mot. for Partial Summ. J.

[20]    See Doc. 63, Mem. and Recommendation dated Oct. 9, 2015.

recommendation on November 3, 2015.[21]

On December 15, 2015, LAC filed a second motion for Summary Judgment on grounds independent of its previous motion.[22]   On January 19, 2016, Catlin filed a response and cross-motion for partial summary judgment on two of LAC's defenses.[23]   On April 14, 2016, the court signed an order extending the deadline to file dispositive motions to June 17, 2016.[24] On May 31, 2016, LAC filed an amended motion for summary judgment based on its previous December 15, 2015, motion.[25]

On June 3, 2016, the 49th District Court of Zapata County, Texas issued an order granting a partial summary judgment in a related case in state court.[26]   The court in that case granted a motion for partial summary judgment holding that Hallmark Specialty Insurance Company ("Hallmark") did not owe a defense or indemnity to LAC based on Catlin's claims.[27]   On June 16, 2016, Defendant filed a motion to dismiss based on the state court's order.[28]

----

[21]   See Doc. 67, Order dated Nov. 3, 2015.

[22]   See Doc. 73, Def.'s 2nd Mot. for Summ. J.

[23]   See Doc. 86, Pl.'s Cross-Mot. for Summ. J.

[24]   See Doc. 100, Order dated Apr. 14, 2016.

[25]   See Doc. 101, Def.'s Am. 2nd Mot. for Summ. J.

[26]   See Doc. 102-5, Ex. E to Def.'s Mot. to Dismiss, Order for Partial Summ. J.

[27]   See id.

[28]   See Doc. 102, Def.'s Mot. to Dismiss.

On June 17, 2016, Catlin responded to LAC's motion for summary judgment, filed an amended motion for partial summary judgment, and filed a third motion for summary judgment on LAC's remaining affirmative defenses.[29] On July 6, 2016, Catlin responded to LAC's motion to dismiss.[30]

Also July 6, LAC filed its response to Plaintiff's third motion for summary judgment.[31] The next day, Catlin filed an amended response to LAC's motion to dismiss.[32] On July 8, 2016, Catlin filed a reply in support of its amended second and third motions for summary judgment.[33]

## II. Legal Standard

### A. Dismissal Standard

Pursuant to Rule 12(b)(6), dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. Sullivan v. Leor Energy, LLC, 600 F.3d 542,

---

[29] See Doc. 103, Pl.'s Resp. to Def.'s Mot. for Summ. J.; Doc. 104, Pl.'s Am. Mot. for Partial Summ. J.; Doc. 105, P's 3rd Mot. for Partial Summ. J.

[30] See Doc. 106, Pl.'s Resp. to Def.'s Mot. to Dismiss.

[31] See Doc. 107, Def.'s Resp. to Pl.'s 3rd Mot. for Summ. J.; Doc. 108, Def.'s Reply to P's Am. Mot. for Partial Summ. J.

[32] See Doc. 109, Pl.'s Am. Resp. to Def.'s Mot. to Dismiss.

[33] See Doc. 110, Pl.,'s Reply in Support of its Am. Mot. for Partial Summ. J.; Doc. 111, Pl.'s Reply in Support of its 3rd Mot. for Partial Summ. J.

546 (5th Cir. 2010).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.   A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.   In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.

**B.**   **<u>Summary Judgment Standard</u>**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).   A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th

7

Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>Piazza's Seafood World, LLC v. Odom</u>, 448 F.3d 744, 752 (5th Cir. 2006).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  However, if the party opposing summary judgment responds with evidence in support of each challenged element, the case must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  <u>Honore</u>

v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. City of Henderson, Tex., 286 F.3d 264, 269 (5th Cir. 2002).

In the absence of summary judgment evidence that an actual controversy exists, the court cannot assume that the nonmoving party can or will prove the necessary facts at trial. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

"[U]nsubstantiated assertions are not competent summary judgment evidence." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998)(citing Celotex, 477 U.S. at 324). Furthermore, it is not incumbent on the court to search the record for triable issues. Id. The duty to identify evidence and its connection to the issues raised falls squarely on the party opposing summary judgment. Id. Under the Federal Rules, the court need only

9

consider cited materials in deciding whether a party's evidence satisfies that party's summary judgment burden. Fed. R. Civ. Proc. 56(c)(3).

### III. Analysis

LAC argues that the court should dismiss or abate this proceeding based on res judicata or collateral estoppel, and in the alternative argues that the court must find as a matter of law that the MSA's indemnity agreement does not meet the express negligence test and is void under the Texas Oilfield Anti-Indemnity Act ("TOAIA"). In its cross-motion, Catlin responds that the MSA is not covered under the TOAIA and that LAC's affirmative defenses should be dismissed as a matter of law. The court will consider the parties' arguments in turn.

### A.   LAC's Motion to Dismiss

LAC argues that Catlin's suit should be dismissed, or, in the alternative, abated under res judicata or collateral estoppel because of the state court's June 2016 order granting Hallmark's Cross-Motion for Summary Judgment against Catlin. Catlin responds that it has no controversy with Hallmark and that the order is therefore an advisory opinion, and that there is no final order as required under either res judicata or collateral estoppel.

Res judicata bars the relitigation of claims that could have or were previously brought in a prior suit. Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 312-13 (5th Cir. 2004). In order for

10

a claim to be barred, "(1) the parties in both the prior suit and current suit must be identical; (2) a court of competent jurisdiction must have rendered the prior judgment; (3) the prior judgment must have been final and on the merits; and (4) the plaintiff must raise the same cause of action in both suits." Id. at 313 (quoting Howe v. Vaughan, 913 F.2d 1138, 1143-44 (5th Cir. 1990)).

The doctrine of collateral estoppel, or issue preclusion, bars the litigation of an issue that has been raised and litigated in a previous lawsuit. See Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 572 (5th Cir. 2005). The following elements must be satisfied in order to preclude an issue under principles of collateral estoppel: "(1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." Id. at 572. Collateral estoppel may apply even when the actual claims and subject matter of the suit differ. Next Level Commc'ns LP v. DSC Commc'ns Corp., 179 F.3d 244, 250 (5th Cir. 1999).

LAC admits in its motion that the June 2016 order is not a final judgment, instead arguing that it will be final "in the near future."[34] It is therefore not disputed by the parties that there

---

[34] See Doc. 102, Def.'s Mot. to Dismiss pp. 4-5.

11

is no final judgment.  In the absence of a final judgment, res judicata and collateral estoppel do not apply.

Similarly, although Catlin does not brief the issue of abatement, it is not applicable.  A district court may enter a permanent stay when parallel suits in different courts have the same parties and the same issues.  <u>Stewart v. Western Heritage Ins. Co.</u>, 438 F.3d 488, 491 (5th Cir. 2006) (discussing the standard in <u>Colardo River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976)).  A district court may only choose to abstain from a case under "exceptional circumstances."  <u>Colorado River</u>, 424 U.S. at 813.  Here, although the issues in the state court may be the same, the parties are different, and so abatement is not required. The court therefore **RECOMMENDS** that LAC's Motion to Dismiss or Abate be **DENIED**.

## B. <u>LAC's Motion for Summary Judgment</u>

LAC argues that the indemnity provision of the MSA is void under the express negligence test and because it violates the Texas Oilfield Anti-Indemnity Act ("TOAIA").

### 1. **Express Negligence Doctrine**

LAC first argues that the indemnity provision of the MSA is void under the express negligence doctrine.  Catlin responds that the MSA meets the necessary requirements of the doctrine.

To be enforceable, an indemnity agreement must meet the requirements of the express negligence doctrine.  <u>Dresser Indus.,</u>

12

Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 509 (Tex. 1993). The doctrine states that a party releasing claims based on its own negligence must specifically state the intent of the parties in the four corners of the contract.  Storage & Processors, Inc. v. Reyes, 134 S.W.3d 190, (Tex. 2004).

LAC argues that the indemnity provision is fatally vague because it states "regardless of the fault or negligent, sole or concurrent of any indemnified party . . . ."[35]  LAC argues that the MSA's use of "negligent" instead of "negligence" makes the sentence vague and ambiguous and that the use of the term "regardless" did not state a specific intent to indemnify a party against its negligence.

The court does not find the use of the term "negligent" instead of "negligence" to be ambiguous; there is only one reasonable interpretation and the intent of the parties is clear regardless of a scrivener's error.  See Lawyers Title Ins. Corp. v. Doubletree Partners, L.P., 739 F.3d 848, 858-59 (5th Cir. 2014) (holding that a contract is ambiguous only if the contract "is susceptible to two or more reasonable interpretations").  Nor is LAC correct that "regardless" fails to state a specific intent supported by Texas law.  In Enserch Corp. v. Parker, 794 S.W.2d 2 (Tex. 1990), the Supreme Court of Texas found that language stating

---

[35]    See Doc. 1-3, Ex. 3 to Pl.'s Compl., Master Service Agreement p. 4.

13

"regardless of whether such claims are founded in whole or in part upon alleged negligence of [contractor]" was sufficient to meet the express negligence test.  Id. at 8.  The court finds that the MSA meets the express negligence test.

**2.  The TOAIA**

LAC next argues that the MSA is void under the provisions of the TOAIA.  The TOAIA was enacted because of inequity in certain contractor indemnity agreements.  Tex. Civ. Prac. & Rem. Code 127.002.  To address this issue, the Texas Legislature codified under the TOAIA that "certain agreements that provide for indemnification of a negligent indemnitee are against the public policy of this state."  Id.  The TOAIA accordingly states that an agreement "contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water . . . is void if it purports to indemnify a person against loss or liability" when that damage is based in whole or in part on the indemnitee's own negligence and arises from personal injury, death, or property injury.  Id. § 127.003.

LAC contends that the indemnity is void under Section 127.003 of the TOAIA.  LAC argues that the TOAIA applies to the MSA because Section 127.001 states that the TOAIA applies to an agreement concerning the rendering of well or mine services or performing "an act collateral" to well or mine services.  See Tex. Civ. Prac. & Rem. Code 127.001.  LAC contends that the work it did under the MSA

14

was work collateral to the rendering of oil or mine services.  It
argues that the provision does not fall within the safe harbor
provision of Section 127.005 because LAC did not agree in writing
that the indemnity obligation would be supported by liability
coverage.

Catlin responds that the MSA is not covered under the TOAIA
because LAC is not a "certain contractor" and because there is a
requirement for a "close nexus" to well drilling or mining for the
TOAIA to apply.  See In re Complaint of John E. Graham & Sons, 210
F.3d 333, 340 (5th Cir. 2000) (stating that an agreement must bear
a close nexus to a well or mine for the TOAIA to apply).  Catlin
contends that the underlying incident involving the decedent was
related to the transportation and delivery of cattle guards, not
oil production.  Catlin argues that even if the TOAIA applies, the
safe harbor provision is satisfied.

The TOAIA defines "well or mine service" to include
constructing or otherwise rendering services in connection with a
structure intended for use in producing a mineral, but does not
include related services involving pipelines or facilities.  Tex.
Civ. Prac. & Rem. Code 127.001(4).  The Fifth Circuit recognized
that the Supreme Court of Texas has not considered the definition
of a "well or mine service," but, based on the holdings in Texas
appellate courts, found that the service must bear a close nexus
with production activities for the TOAIA to apply.  In re John E.

15

Graham, 210 F.3d at 339-40.

In considering the legislature's expansion of the act to include "otherwise rendering services," the Fifth Circuit noted that the listed services "are directed toward the goal of obtaining or maintaining production from a well." Id. at 343. The court accordingly found that "otherwise rendering services in connection with a well" required a close nexus to a well and actions directed towards obtaining or maintaining production from a well. Id.

LAC relies on Dennis v. Fluid Crane and Construction, Inc., 823 F. Supp. 2d 415, (E.D. La. 2011), for the proposition that courts have considered and rejected the "close nexus" requirement. See id. at 419. However, that Louisiana district court case involves a rejection of the Fifth Circuit's holding in In re John E. Graham, describing the requirement as "dicta." See Dennis, 823 F. Supp. 2d at 419. The court does not agree: although the court in Dennis stated that In re John E. Graham did not "directly address the types of work to which the TOAIA applies," the Fifth Circuit explicitly states: "We hold that a contractor is 'otherwise rendering services in connection with a well' if the services called for by the contract bear a close nexus to a well and are directed toward the goal of obtaining or maintaining production from a well." Compare In re John Graham, 210 F.3d at 343 with Dennis, 823 F. Supp.2d at 419 (stating that the defendant's argument was not persuasive because "defendant merely cites to

16

dicta"). This court is bound by the holding of the Fifth Circuit, and accordingly finds that a close nexus to services directed at obtaining or maintaining production must apply. Finding that a close nexus must apply, the court next turns to whether a nexus exists in this case.

The parties dispute whether there is a close nexus to oil production activities. LAC argues that the MSA is covered under the TOAIA because private roads and well pads are necessary infrastructure that supports and are necessary for oil production. Catlin responds that LAC merely purchased and delivered aggregate and did not actually construct roads or well pad sites, and notes that the decedent's death involved the building of a cattle guard, and was therefore unrelated to oil production. The MSA, not the specific incident involving the death of one of LAC's employees, controls whether the TOAIA applies. <u>See</u> Tex. Civ. Prac. & Rem. Code 127.003. The MSA does not specifically outline the work LAC was to perform on Wolverine's behalf, but according to LAC's former general partner, LAC at the time of the agreement was a trucking company that transported equipment and materials, and Wolverine was a construction company that was a contractor of Shell Oil.[36]

The court finds the MSA is not an agreement "contained in, collateral to, or affecting an agreement pertaining to a well . . .

---

[36]   <u>See</u> Doc. 101-1, Ex. A to Def.'s 2nd Am. Mot. for Summ. J., Aff. of Gonzalez ¶¶ 4-5.

. or to a mine." See Tex. Civ. Prac. & Rem. Code 127.003.  In Coastal Transport Co. v. Crown Central Petroleum Corp., 20 S.W.3d 119 (Tex.App.—Houston [14ᵗʰ Dist.] (2000), a Texas Court of Appeals considered whether an agreement between Crown Central Petroleum ("Crown Central"), a petroleum company, and a transportation company was void under the TOAIA.  Id. at 127.  The court noted that the act applied to contracts for services involved in the drilling or servicing of wells, and found that Crown Central was involved in refining, supplying, and transportation of petroleum, and was therefore not involved in the drilling or servicing of wells, so the TOAIA did not apply. Id.  Here, Wolverine is a construction company and is similarly not connected to the drilling or servicing of wells.  Because there is no close nexus between obtaining or maintaining production from a well, the MSA is not an agreement under the TOAIA.  See In re John E. Graham, 210 F.3d at 343.

Finding that the TOAIA does not apply to the MSA, the court need not consider whether the safe harbor provision of the TOAIA applies.  Similarly, the court need not consider LAC's argument in the alternative that Catlin's recovery should be capped at a million dollars, the listed minimum insurance coverage under the MSA.  The court accordingly **RECOMMENDS** that LAC's motion for summary judgment be **DENIED**.

## C.  Catlin's Motion for Summary Judgment

18

Catlin moves for partial summary judgment on all of LAC's remaining affirmative defenses.

## 1.  Evidentiary Issues

Before considering the merits of Catlin's motion, the court addresses LAC's objections to Catlin's summary judgment evidence.

LAC objects to the declaration of Shelby Thomas, ("Thomas") a claims examiner who was assigned to the underlying state court lawsuit. LAC specifically objects to Thomas' declaration that "Demand was made on [LAC] to defend and indemnity (sic) [Wolverine] in connection with the Zapata Lawsuit."[37]  Thomas further declares that "LAC refused to defend and indemnify Wolverine in the connection with the Zapata lawsuit."[38]  LAC characterizes Thomas' statement in paragraph 3 as a legal conclusion without supporting facts, and objects to paragraph 4 as a conclusory statement about legal duties.  The court does not read these paragraphs as legal conclusions: Thomas was an employee of Catlin and has first-hand knowledge that demand was made and that LAC refused to indemnify Catlin.  As Thomas merely states factual information within her personal knowledge, LAC's objection to these statements is **OVERRULED**.

LAC also objects to Plaintiff's Exhibit 105-9, which is an

---

[37]     See Doc. 105-2, Ex. 2 to Pl.'s 3rd Mot. for Summ. J., Decl. of Thomas ¶ 3.

[38]     See id. ¶ 4.

expert report regarding the reasonableness of the state court settlement and for the reasonableness of Catlin's attorneys' fees and costs prepared by one of Catlin's expert witnesses. LAC objects to the report on the grounds that it is hearsay. The report is not sworn or authenticated by the expert, nor is it presented in the form of an affidavit. See <u>Duplantis v. Shell Offshore, Inc.</u>, 948 F.2d 187, 191 (5th Cir. 1991). The court therefore **SUSTAINS** LAC's objection.

### 2. Catlin's Partial Motion for Summary Judgment

Catlin moves for partial summary judgment on each of LAC's remaining affirmative defenses. LAC responds that the court should deny Catlin's motion only regarding LAC's defense that the payment made in the settlement was unreasonable or unnecessary. LAC argues the court should deny Catlin's motion regarding this defense because Catlin has not presented any competent summary judgment evidence establishing the reasonableness of the settlement. Catlin replies that LAC, not Catlin, has the ultimate burden of proving affirmative defenses, and cannot present evidence supporting its defense.

A plaintiff may move for summary judgment on a defendant's affirmative defenses rather than filing a motion to strike. <u>U.S. ex rel. King v. Solvay S.A.</u>, 304 F.R.D. 507, 510 (S.D. Tex. 2015). If the defendant has the ultimate burden of proving an affirmative defense, a plaintiff may satisfy its burden by showing the absence

of evidence for an essential element of the defense.  Hewlett Custom Home Design, Inc. v. Frontier Custom Builders, Inc., 2013 WL 1194754, at *5 (S.D. Tex. Mar. 21, 2013).

Catlin moves for summary judgment on LAC's affirmative defense under the theory that LAC cannot establish as a matter of law that the settlement was unreasonable.  Catlin relies on Amerada Hess Corp. v. Wood Group Production Technology, 30 S.W.3d 5 (Tex.App.—Houston [14th Dist.] 2000), which states that issues regarding the reasonableness of a settlement "are questions upon which the trier of fact must be guided solely by expert testimony."  Id. at 11.  Catlin notes that while it has designated an expert witness for this purpose, LAC has not done so and the deadline to do so has now passed.[39]

LAC responds only that Catlin has not presented any credible summary judgment evidence that the settlement was reasonable.  As explained above, Catlin need not present  evidence but may show an absence of evidence for an essential element of LAC's defense.  Here, LAC asserts that the settlement was unreasonable, but has not designated an expert to address the issue.  Catlin is correct that LAC cannot present any evidence to a potential jury.  LAC does not attempt to contest Catlin's motion regarding its other affirmative defenses.  Because Catlin has shown that LAC cannot establish its

---

[39]    The deadline for an expert witness list was December 1, 2015.  See Order dated May 15, 2015, extending deadlines.

affirmative defenses as a matter of law, the court **RECOMMENDS** that Catlin's motion be **GRANTED** with respect to LAC's affirmative defenses and that all remaining affirmative defenses be **DISMISSED**.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that LAC's motion to dismiss be **DENIED**, its motion for summary judgment be **DENIED** and Catlin's Partial Motion for Summary Judgment be **GRANTED**.  If this recommendation is adopted, all of LAC's affirmative defenses will be **DISMISSED** as a matter of law.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 25th  day of July, 2016.

U.S. MAGISTRATE JUDGE

22